UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CAROLYN RINCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  08-cv-1160 |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant's Motion for Summary Judgment.  (Doc. 25).  Plaintiff has filed her Response in opposition to the Motion, and Defendant has filed its Reply in support of it.  (Docs. 28 & 31).  Also pending is Defendant's Motion to Strike certain paragraphs of Plaintiff's affidavit in support of her Response to the Motion for Summary Judgment, to which Plaintiff has responded in opposition.  (Docs. 29 & 32).  For the reasons stated below, the Motion for Summary Judgment is granted, and the Motion to Strike is denied as moot.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In ruling on a motion for summary judgment, the court must view the evidence on record in the light most favorable to the non-moving party.  *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d

365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The Court draws only reasonable inferences. *Id.*

It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (*quoting Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)). Once the movant has met its burden of showing the Court that there are no genuine issues of material fact, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## BACKGROUND[1]

Plaintiff is employed by Defendant, the Illinois Department of Corrections, as a Correctional Officer at Dwight Correctional Center, a maximum security prison for females; she held this position in August 2006. (Rincker Dep. at 4). Kenneth Kozlowski was also employed by Defendant as a Correctional Officer at Dwight Correctional Center in 2006. (Rincker Dep. at 19, 38). On August 20-21, 2006, Kozlowski was assigned to work the gatehouse, through which all non-administrative staff enters the institution, for the 11 P.M. to 7 A.M. shift. (Rincker Dep. at 20, 38, 49; Sigler Dep. at 60). On August 21, 2006, Plaintiff, who was assigned to begin her shift at 7:00 A.M., entered the gatehouse prior to the 6:45 A.M. roll call. (Rincker Dep. at 38, 41). When Plaintiff entered the gatehouse, Kozlowski hugged her and squeezed her left breast momentarily.[2] (Rincker Dep. at 46-48, 83).

---

[1] These background facts are drawn from the parties' respective statements of undisputed material facts, and are indeed undisputed unless otherwise indicated. If a fact is excluded, it is because it is immaterial to the disposition of the Motion for Summary Judgment.
  The Court notes that Plaintiff's Response to Defendant's Motion for Summary Judgment is not in compliance with Local Rule 7.1(D)(2), which requires specific statements of whether facts from the Motion for Summary Judgment are disputed, with those facts referred to by number. Any facts that are disputed are to be accompanied by citations to the record supporting the non-moving party's version of events. Local Rule 7.1(D)(2)(b)(2) ("Each such claim of disputed fact must be supported by evidentiary documentation referenced by specific page."). As noted above, it is not the Court's function to search through the record for evidence that Plaintiff has failed to cite in opposition to the Motion for Summary Judgment. The Court considers only the facts that the parties have specifically stated and supported in their respective statements of facts, and does not consider as subject to a genuine dispute those facts that are alleged without support to be disputed.

[2] Plaintiff indicates that Kozlowski had approached her romantically before, but admits that these previous actions did not rise to the level of sexual harassment and that they are not part of her current claim. (Doc. 28 at 13 fn. 3). Plaintiff had

3

Plaintiff had previously witnessed Kozlowski hugging male and female employees at the institution. (Rincker Dep. at 27).

Plaintiff completed an incident report at approximately 7:10 A.M. on August 21, 2006, reporting the gatehouse incident. (Rincker Dep. at 49-50, 52; Def. Ex. 2). That afternoon, Plaintiff met with Dwight Correctional Center Warden Mary Sigler, who informed Plaintiff that her allegation had been forwarded to the Office of Affirmative Action for investigation. (Rincker Dep. at 56-57). Sigler sent a letter to Plaintiff the next day confirming that the matter had been forwarded to the Office of Affirmative Action for investigation by external investigators. (Rincker Dep. at 88; Def. Ex. 3). On August 28, 2006, Anita Emrich, an external investigator, interviewed Plaintiff regarding the incident. (Rincker Dep. at 66; Def. Ex. 4). Emrich interviewed Kozlowski on September 1, 2006; Kozlowski admitted to intentionally touching Plaintiff's breast and groaning. (Def. Ex. 5). Plaintiff was not officially informed of the status of the investigation or of its outcome. (Rincker Dep. at 118).

Kozlowski was referred to an Employee Review Officer for the offense of assault of a fellow officer on October 17, 2006. (Def. Ex. 6). Following an Employee Review Hearing, Kozlowski was suspended from duty pending discharge effective December 11, 2006, and was to return to work January 10, 2007. (Def. Exs. 8 & 9). He was discharged effective January 5, 2007. (Def. Ex. 15; Pltf. Ex. 3). Kozlowski grieved his discharge, and, in resolution of his grievance, was returned to work on February 9, 2007, without back pay, and with a record notation of a general leave of

---

never officially reported any actions toward her by Kozlowski prior to August 21, 2006. (Rincker Dep. at 36, 40, 44-45).

4

absence. (Def. Ex. 14). When Kozlowski returned to work, he was allowed to post a card thanking his co-workers for their support during the investigation and his appeal. (Rincker Dep. at 89-96). As part of her explanation for why Kozlowski was allowed to post the card, Sigler told Plaintiff that "You know it's a boy's club here, and you need to get used to it."³ (Rincker Dep. at 96).

Darrin Shull was a Shift Commander at the institution in August 2006. (Shull Aff. at ¶ 1). As part of his duties, Shull was responsible for making work assignments to officers on the 11 P.M. to 7 A.M. shift.⁴ (Shull Aff. at ¶ 1). On August

---

³ Though Plaintiff, as with her other "Disputed Facts," failed to cite evidence of this comment and in support of her contention that whether Sigler made this statement is in dispute, Defendant has admitted for the purposes of summary judgment that Sigler made this statement, and so the Court will consider it. (Doc. 31 at Reply to Material Facts Claimed to be Undisputed ¶ 6).

⁴ Plaintiff asserts that it is disputed whether Shull or Rebecca Bunting was the Shift Commander who assigned Kozlowski's work. (Disputed Facts ¶¶ 1 & 2). As noted above, the Court does not consider the issue of which Shift Commander assigned Kozlowski's work as in dispute, as Plaintiff's allegation is not in compliance with Local Rule 7.1(D)(2)(b)(2).

Moreover, in her "Additional Undisputed Facts," Plaintiff asserts, without support, that Bunting was the Shift Commander for the 11 p.m. to 7 a.m. shift; the citations to Bunting's deposition accompanying this assertion do not state what shift Bunting worked, and so this statement of "Undisputed Fact" is not considered. (Doc. 28 at Add'l Undisputed Facts ¶ 31). In Plaintiff's Affidavit, which is not specifically cited in relation to the Shift Commander "dispute," Plaintiff states that Shull was the Shift Commander for the 7 A.M. to 3 P.M. shift and that Bunting was the Shift Commander for 11 P.M. to 7 A.M. (Pltf's Ex. 6).

Plaintiff thus apparently wishes the Court to infer that, if Bunting was Kozlowski's Shift Commander, and, if Shift Commanders make the work assignments for the officers on their shift, that Bunting was the person who made Kozlowski's work assignments. However, where Shull has *specifically* testified that he was responsible for making the work assignments for Kozlowski's 11 P.M. to 7 A.M. shift, and Plaintiff provides no testimony or specific evidence based on personal knowledge contradicting this testimony, it is not a reasonable inference that Shull did not make Kozlowski's work assignments. Indeed, Bunting testified that "Kozlowski worked a completely different shift than what I was assigned, so I would not necessarily have received information about where to assign him or not to

5

21, 2006, Shull received a copy of the incident report Plaintiff had completed. (Shull Aff. at ¶ 2). That day, he also received a message from Sigler instructing that Kozlowski was not to be assigned to the gatehouse, and was to be assigned to a "non-contact" position at the switchboard in the Administration Building.[5] (Shull Aff. at ¶ 3). The same day, Shull assigned Kozlowski to the switchboard, where he was assigned until he was locked out of the institution in December 2006.[6] (Shull Aff. at ¶ 4).

---

assign him, those kinds of things. *I was not his shift commander.*" (Bunting. Dep. at 46 (emphasis added); see also Bunting Dep. at 57). In the face of very specific testimony by the two people who had personal knowledge of whether they were Kozlowski's Shift Commanders, no reasonable jury would rely on Plaintiff's Affidavit to the contrary. There is no dispute: Shull was the Shift Commander responsible for making Kozlowski's work assignments.

[5]  Plaintiff contends that it is disputed "[w]hether Sigler advised the Shift Commanders by electronic missive that Kozlowski was to be placed in a non-contact position to separate him from the Plaintiff." (Doc. 28 at Disputed Facts ¶ 3). However, Plaintiff provides no evidence by which to dispute Shull's testimony that he did receive such a message. (Shull Aff. at ¶ 3). Her only support for the existence of a dispute is the assertion that Rebecca Bunting, another Shift Commander, "did not receive a directive from Sigler that Kozlowski was to be placed in a non-contact assignment away from the Plaintiff." (Doc. 28 at Add'l Undisputed Facts ¶ 31). However, as pointed out by Defendant, Bunting in fact testified that she *did not recall* whether she had received such a message, and that, because she was not his Shift Commander, she "would not necessarily have received information about where to assign him or not to assign him, those kinds of things;" Bunting did not testify that she did not receive the message. (Bunting. Dep. at 46-47). Where Shull specifically testified that he did receive such a message, and where Bunting could not recall whether she had received it, it is not a reasonable inference that no such message was disseminated. Moreover, as discussed above with reference to Plaintiff's other asserted "Disputed Facts," the Court does not consider Plaintiff's assertion that this fact is in dispute, as Plaintiff failed to comply with Local Rule 7.1(D)(2)(b)(2).

[6]  Plaintiff asserts that it is disputed "[w]hether Shull acting as Kozlowski's Shift Commander assigned him to a non-contact position at switchboard in the Administrative Building from August 21, 2006, until Kozlowski was locked-out in December of 2006," and "[w]hether Kozlowski was assigned a non-contact position

6

Plaintiff admits that she did not have any interactions with Kozlowski of a sexual nature after August 21, 2006. (Doc. 28, Undisputed Material Facts ¶ 9). She identifies several other workplace encounters after that date, though. Plaintiff saw Kozlowski in the gatehouse on August 22, 2006. (Rincker Dep. at 59-60). Plaintiff reported to Emrich during her August 28, 2006 interview that she had had encountered Kozlowski in the gatehouse that morning. (Def. Ex. 4 at 6; Pltf. Ex. 6, Att. A at 6). In addition, on June 26, 2007, Plaintiff saw Kozlowski in the Shift Commander's office, and, after speaking with a superior officer, Kozlowski patted Plaintiff's hand and said to her "You go tell 'em, Rincker." (Rincker Dep. at 103-04; Pltf's Ex. 8). Plaintiff also identifies other times after August 21, 2006, when she encountered Kozlowski at work, though she did not remember the dates. On one occasion, Kozlowski saw Plaintiff at work and shook her hand. (Rincker Dep. at 98). Plaintiff also encountered Kozlowski while he was having a conversation with a coworker, and he left the room when she entered. (Rincker Dep. at 102-03). Another day, she requested a ride from one location in the institution to another, and Kozlowski drove to her location to pick her up; Plaintiff did not accept the ride from Kozlowski. (Rincker Aff. at ¶ 5).[7] Kozlowski worked for four hours operating

---

away from the Plaintiff from August 21, 2006, until Kozlowski was locked-out in December of 2006." (Doc. 28 at Disputed Facts ¶¶ 4 & 5). However, as with her other allegedly "Disputed Facts," Plaintiff failed to cite to the record for evidence in support of the dispute (or even to explain her position as to the "disputed facts") as required by Local Rule 7.1(D)(2)(b)(2). Therefore, the Court does not consider these alleged "disputed facts."

[7]    Defendant has moved to strike the paragraphs of Plaintiff's Affidavit that describe at-work encounters with Kozlowski that were not mentioned in Plaintiff's deposition, and that appear to contradict her statement at the deposition that she had there described all of their post-August 21, 2006 encounters. (Doc. 29). The

7

all locked doors in a housing unit in which Plaintiff was assigned to work two wings. (Rincker Aff. at ¶ 6(a)). On one occasion, Kozlowski was assigned to operate the doors of a building through which Plaintiff had to pass on her way to roll call. (Rincker Aff. at ¶ 6(b)).

On January 24, 2007, Plaintiff filed a charge of discrimination with the EEOC, which issued her a right to sue letter on April 10, 2008. (Def. Exs. 12 & 13). Plaintiff filed the instant suit on July 8, 2008, alleging that the August 21, 2006 incident with Kozlowski created a hostile working environment in violation of Title VII.[8] (Doc. 1).

## DISCUSSION

Title VII prohibits discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). "One of the ways in which Title VII's prohibition against sex discrimination in the terms and conditions of employment may be violated is through sexual harassment that is either severe or pervasive enough to create an abusive working environment." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)). Such

---

Court finds that it is unnecessary to consider the Motion to Strike, as, even considering these encounters described by Plaintiff in her Affidavit (which are submitted in support of her contention that Defendant's response to the alleged harassment was inadequate), there is no basis for employer liability in this case. Therefore, Defendant's Motion to Strike will be denied as moot.

[8]   In her Complaint, Plaintiff also alleged that the June 26, 2007 hand-pat by Kozlowski was an incident of sexual harassment, but she appears to have dropped that allegation on summary judgment, arguing only that the August 21, 2006 incident was severe or pervasive enough to constitute actionable harassment. (Doc. 28 at 9). She instead relies on the June 26, 2007 hand-pat and comment to show that Defendant's response to her allegation of harassment was inadequate and unreasonable. (Doc. 28 at 9).

harassment must be "because of" the plaintiff's sex. *Id*. In addition, "[w]hen a plaintiff…claims coworkers alone were responsible for creating a hostile work environment, he must show that his employer has 'been negligent either in discovering or remedying the harassment.'" *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1029 (7th Cir. 2004) (*citing Mason v. Southern Illinois University at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)).

In its Motion for Summary Judgment, Defendant argues that summary judgment should be granted in its favor both because the alleged harassment by Kozlowski was not so severe or pervasive as to create a hostile working environment, and because there is no basis for employer liability, as it acted reasonably in preventing and remedying the sexual harassment. (Doc. 26 at 5).

**I.   Severe or Pervasive Sexual Harassment**

Defendant contends that Kozlowski's sexual harassment of Plaintiff was neither severe enough nor pervasive enough to have altered the conditions of her employment. Defendant first argues that the Kozlowski's August 21, 2006 hug should be excluded from the sexual harassment allegations, as it was not "because of" Plaintiff's sex; Defendant relies on evidence that Kozlowski often hugged both male and female co-workers. (Doc. 26 at 5-6 (*citing* Rincker Dep. at 27, 47)). Though "a Title VII remedy [is] precluded when both sexes are treated badly," the Court does not find that it is necessary to exclude the hug from consideration. *Holman v. Indiana*, 211 F.3d 399, 404 (7th Cir. 2000). The hug was part of Kozlowski's touching of Plaintiff's breast - the two occurred simultaneously, and the hug facilitated Kozlowski's unwelcome touching of Plaintiff's breast, which

9

Defendant does not deny was "because of" her sex. Defendant does not argue or put on evidence that Kozlowski touched the intimate body parts of male co-workers while hugging them. Therefore, this hug was qualitatively different from the hugs Kozlowski gave to male co-workers, and was arguably "because of" Plaintiff's sex. Further, Plaintiff does not rely on the hug alone as a separate instance of sexual harassment, but discusses it as part of the breast touch. (Doc. 28 at 9 fn. 1).

Considering the hug and breast touch together as a single instance of unwelcome sexual harassment because of Plaintiff's sex, the Court finds that it was not severe or pervasive enough to alter the conditions of Plaintiff's employment.

> [H]arassing conduct does not need to be both severe and pervasive. One instance of conduct that is sufficiently severe may be enough. Conversely, conduct that is not particularly severe but that is an incessant part of the workplace environment may, in the end, be pervasive enough and corrosive enough that it meets the standard for liability.

*Jackson*, 474 F.3d at 499 (*citing Cerros v. Steel Tech., Inc.*, 398 F.3d 944, 950 (7th Cir. 2005); *Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999)). Plaintiff concedes that the hug and breast touch were the single incident of sexual harassment to which Plaintiff was subjected.[9] (Doc. 28 at 9-13). Therefore, this one instance must be "sufficiently severe" to have altered the conditions of Plaintiff's employment.

In order to establish that the harassment was severe or pervasive enough to constitute discrimination under Title VII, Plaintiff must show that it was "so

---

[9] As noted above, Plaintiff does not rely on previous advances by Kozlowski in support of her claim, and admits that he did not sexually harass her after August 21, 2006. She states that "[t]he question for the Court is whether [the August 21, 2006 hug and breast touch], *without the added weight of repetition over time or accumulation with other acts of harassment*, can stand alone as the basis for [a] harassment claim." (Doc. 28 at 13 (emphasis added)).

10

objectively offensive as to alter the conditions of [her] employment." *Jackson*, 474 F.3d at 499 (*quoting Oncale*, 523 U.S. at 81) (alteration in original). At the summary judgment stage, "the court must examine all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (*quoting Moser v. Indiana Dept. of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005)). Isolated incidents are not sufficient "unless extremely serious." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

"The fact that conduct that involves touching as opposed to verbal behavior increases the severity of the situation." *Worth v. Tyler*, 276 F.3d 249, 268 (7th Cir. 2001) (*citing Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000)). However, occasional non-sexual touches are not typically sufficient, and "[e]more intimate or more crude physical acts-a hand on the thigh, a kiss on the lips, a pinch of the buttocks-may be considered insufficiently abusive to be described as "severe" when they occur in isolation." *Hostetler*, 218 F.3d at 808 (*citing Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 706-07, 708 (7th Cir. 1995); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 528, 534 (7th Cir. 1993); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993); *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 211-12, 213-14 (7th Cir. 1986)).

11

Plaintiff argues that a single touch of an intimate body part has been held to be "one of the most severe forms of sexual harassment."[10] (Doc. 28 at 10). Plaintiff cites to three cases in which touching an intimate body part was held to be actionable: *Worth*, 276 F.3d. at 268; *Hostetler*, 218 F.3d. at 808-09; and *Mainor v. Chicago Transit Authority*, 03-c-9102, 2005 WL 3050604, *6-7 (N.D. Ill. Nov. 15, 2005). Each of these is easily distinguished as concerning a course of conduct that was more severe or more pervasive than the isolated hug and over-the-clothing breast touch alleged here. In *Worth*, the alleged harasser, over a period of two days, massaged the plaintiff's shoulders and neck; stroked her hand; brushed against her; stared at her breasts; stroked her face, hair, and nose; reached into her dress and touched her breast directly for several seconds; and stroked her backside and leg. *Worth*, 276 F.3d at 256-57. The *Worth* court noted that there were several incidents of touching, and that the most severe involved several seconds of direct contact with the plaintiff's breast inside her dress. *Id.* at 268.

There were three incidents in question in *Hostetler*, of which two were highly intimate: the alleged harasser "grabbed [the plaintiff's] face one day at work and

---

[10] Though the argument is not fleshed out in her Response to the Motion for Summary Judgment, Plaintiff appears to allude in her brief to the idea that Defendant "created an environment that was sexually hostile to her by assigning [(or allowing) Kozlowski] to work near her after she had complained about his conduct." *Adusumilli*, 164 F.3d at 362. As the *Adusumilli* court observed, "in some cases the mere presence of an employee who has engaged in *particularly severe or pervasive harassment* can create a hostile working environment." *Id.* (*quoting Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991); *citing Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir.1992)) (emphasis in original quotation). Here, though, as will be discussed further below, Kozlowski's conduct was not sufficiently severe or pervasive to constitute actionable harassment, and therefore this cannot be a case of "particularly severe or pervasive harassment" where Defendant's alleged assignment of Kozlowski to work duties that occasionally put him near Plaintiff helped create a hostile work environment.

stuck his tongue down her throat. On the following day, he tried to kiss her again and when she struggled to evade him, he began to unfasten her brassiere, threatening to 'undo it all the way.'" *Hostetler*, 218 F.3d at 801. In addition, he later made a crude comment about performing oral sex on the plaintiff. *Id.* at 802. The *Hostetler* court that these actions together were sufficient to withstand summary judgment. *Id.* at 808-09. In *Mainor*, the alleged harasser "grabbed [the plaintiff's] head, shoved his tongue in her mouth, groped her breast, and grabbed between her thighs;…contrived his way into her home, groped her breast again, and attempted to kiss her; and…stared at her and grinned in a threatening manner." *Mainor*, 2005 WL 3050604, *6. These incidents took place over the course of several months. *Id.* at *1-2.

Here, unlike the plaintiffs in *Worth*, *Hostetler*, and *Mainor*, who each alleged several incidents, Plaintiff has alleged only one incident of harassing behavior. In addition, the single hug and breast touch are, even construed most favorably to Plaintiff, of lesser or at most equal severity to the worst incident in each case: in *Worth*, a several-seconds' touch of the plaintiff's bare breast, in *Hostetler*, a forcible kiss or attempt to unfasten the plaintiff's bra, and in *Mainor*, a over-the-clothing touch of the plaintiff's breast (accompanied by an attempt to kiss the plaintiff after forcibly entering her home). Plaintiff has cited no case in which a single incident of the level of severity of a hug and momentary over-the-clothing breast touch was held to constitute actionable sexual harassment, and with good reason: such a minor incident, as a matter of law, is not so severe or pervasive as to alter the conditions of a person's employment. This case is more like those involving a single

13

touch of the buttocks combined with crude comments or other touches, in which the courts have held that the conduct was not severe or pervasive enough to withstand summary judgment; here, all that is alleged is the single touch. *See Adusumilli*, 164 F.3d at 361-62 (comments and touch of buttocks insufficient); *Koelsch*, 46 F.3d at 706-08 (rubbing of leg with foot despite requests to stop and later grabbing of buttocks insufficient, even when combined with suggestive jokes). Therefore, Plaintiff has failed to meet her burden of showing the existence of a genuine issue of material fact as to whether Kozlowski's conduct was sufficiently severe or pervasive.

## II. Employer Liability

Though the Court has found that Kozlowski's conduct was not so severe or pervasive as to create a hostile working environment, and therefore need not address the question of whether there is an adequate basis for employer liability for his actions, in the interest of a thorough disposition, the Court will proceed to discuss Defendant's response to Plaintiff's complaint of sexual harassment. As noted above, "[w]hen a plaintiff…claims coworkers alone were responsible for creating a hostile work environment, he must show that his employer has 'been negligent either in discovering or remedying the harassment.'" *Williams*, 361 F.3d at 1029. Here, Plaintiff does not contend that Defendant was negligent in discovering the harassment, but rather claims that Defendant was negligent in remedying it.[11] (Doc. 28 at 13).

---

[11] Therefore, there is no need to discuss Defendant's sexual harassment policies or training. *See Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 953 (7th Cir. 2005) ("the district court's reliance on Steel's implementation of an anti-harassment policy and its training sessions as a basis for finding that it was not negligent in *remedying* harassment is unfounded.") (emphasis added).

"[W]hat is reasonable depends on the gravity of the harassment. …[A]n employer is required to take more care, other things being equal, to protect its female employees from serious sexual harassment than to protect them from trivial harassment." *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 432 (7th Cir. 1995). Even if the harassment alleged by Plaintiff were sufficiently severe or pervasive to be actionable (which it is not), it was not extremely severe or pervasive, and Defendant's response was reasonable and in proportion to the type and frequency of the harassment alleged. *See Saxton*, 10 F.3d at 529 (employer response of investigation and separation of harasser from plaintiff, with no suspension, reasonable in case where harasser rubbed plaintiff's upper thigh, kissed her, and attempted to grab the plaintiff).

The Seventh Circuit recognizes "prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action." *Cerros*, 398 F.3d at 954 (*citing Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 428 (7th Cir. 2004); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999); *Saxton*, 10 F.3d at 535)). Here, it is undisputed that Defendant, upon receiving Plaintiff's complaint, took prompt and reasonable action to investigate it. That same day, Sigler met with Plaintiff and informed her that her allegation had been forwarded to the Office of Affirmative Action for investigation. A week after the incident, Emrich, an external investigator, interviewed Plaintiff about it, and eleven days after the incident, Emrich interviewed Kozlowski. In October 2006, following the investigation, Kozlowski was referred for an Employee Review Hearing, after which Kozlowski

was suspended from duty pending discharge; he was discharged effective January 5, 2007. This investigation and response was reasonable under the circumstances.

The fact that Kozlowski was eventually returned to work following his grievance of the discharge does not undermine the reasonableness of Defendant's response, contrary to Plaintiff's arguments. *Defendant's* response was to suspend and then discharge Kozlowski; these actions were calculated to prevent future harm. The fact that Defendant later had to negotiate with Kozlowski's union and allow him to return to work does not render its own actions unreasonable. Moreover, "our focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Porter v. Erie Foods Intern., Inc.*, 576 F.3d 629, 637 (7th Cir. 2009) (*citing Lapka v. Chertoff*, 517 F.3d 974, 984 (7th Cir. 2008) ("the emphasis of Title VII in this context is not on redress but on the prevention of future harm")). Here, Defendant conducted a prompt and adequate investigation, suspended and then discharged Kozlowski for a period of two months, and then reinstated him without backpay pursuant to a grievance settlement.[12] This course of action was reasonably calculated to prevent future harm. The fact that Kozlowski was not punished as

---

[12] Plaintiff also notes that she was not informed of the result of the investigation or the action taken against Kozlowski, which she asserts helped "undermin[e] any remedial action the DOC attempted to impose." (Doc. 28 at 16). Plaintiff cites no cases in support of the idea that a sexual harassment victim must or should be notified by the employer of the outcome of its investigation of the harassment. An employer's failure to keep the victim informed does not render its response to harassment unreasonable, as the purpose of the employer's response is not to remedy the harm suffered by the victim or to punish the harasser, but to prevent the harassment from reoccurring. Keeping the victim informed, while probably a good idea, is not necessary to fulfill the employer's sole duty to "take steps reasonably likely to stop the harassment." *Saxton*, 10 F.3d at 536.

stringently as Plaintiff would have liked does not render Defendant's response inadequate.

Plaintiff places great weight on the fact that she encountered Kozlowski at work several times after the incident, arguing either that Defendant unreasonably failed to reassign Kozlowski to different work, or that Defendant unreasonably failed to insulate her from all contact with him whatsoever. It is true that separation of the victim from the alleged harasser can be an appropriate response to a claim of harassment.[13] *See, e.g.*, *Williams*, 361 F.3d at 1030 (*citing Tutman v. WBBM-TV, Inc./CBS*, Inc., 209 F.3d 1044, 1049 (7th Cir. 2000)). However, no cases indicate that separation is always required, or that, if it is undertaken, that it must be absolutely effective at preventing incidental workplace contact. Instead, what matters is that it was reasonably likely to prevent further harassing conduct; here, Plaintiff does not allege any harassing conduct other than the August 21, 2006 incident. *Porter*, 576 F.3d at 637.

Further, the evidence shows that Defendant did indeed make a reasonable effort to separate Plaintiff from Kozlowski in the workplace. On August 21, 2006, the same day Plaintiff made her complaint, Sigler ordered Shull, who was in charge of making Kozlowski's work assignments, to change Kozlowski's work assignment in order to move him to a position where he would not have contact with Plaintiff, which Shull did.[14] The fact that Plaintiff ran into him at work after that date does

---

[13] It is important to again note that she does not allege that any further sexual harassment took place at these later encounters.

[14] As discussed above at footnotes 5 and 6, there is no genuine dispute as to whether Sigler ordered that Kozlowski be assigned to a position away from

17

not show that Shull did not make the reassignment as he testified: she offers no evidence that Kozlowski was actually assigned to work in locations where she would be forced to encounter him alone or for any extended period of time. There is no requirement that, in a case such as this, involving what was at worst a single, relatively minor, incident of harassment, the employer contrive to prevent all possible contact between the plaintiff and the alleged harasser. *See McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) (plaintiff encountered harasser on one other occasion after separation but employer response reasonable and effective); *Saxton*, 10 F.3d at 536 ("few occasions on which [plaintiff] sighted [harasser] in her department…immaterial"). *Cf. Lapka*, 517 F.3d at 984 (*citing Adusumilli*, 164 F.3d at 362; *Saxton*, 10 F.3d at 536 fn. 18) ("The continued presence of a rapist in the victim's workplace can render the workplace objectively hostile because the rapist's presence exacerbates and reinforces the severe fear and anxiety suffered by the victim."). The fact that Plaintiff saw Kozlowski at work on only a few occasions after August 21, 2006 shows that Defendant's efforts to separate the two were reasonably calculated to be successful enough to prevent

---

Plaintiff, or as to whether he was indeed reassigned. Plaintiff again tries to create such a dispute by noting that Defendant has produced no documentary evidence that Kozlowski was indeed moved to a position away from Plaintiff. (Doc. 28 at 14 fn. 5). Defendant has produced the affidavit from Shull that both the order and the reassignment were made. In order to show the existence of a factual dispute, it is now *Plaintiff's* burden to come forward with evidence that Shull did not receive such an order and did not in fact reassign Kozlowski, and Plaintiff has not done so. *See Warsco*, 258 F.3d at 563. All Plaintiff has pointed to is testimony from Bunting that she did not remember whether she had received such an order; Bunting also testified that she was not Kozlowski's Shift Commander and therefore such an order may not have been sent to her in any event. This is insufficient to overcome Shull's affirmative testimony that he received and acted on the order to reassign Kozlowski.

further harassment; indeed, they did prevent further harassment. Further, Plaintiff does not allege that she was ever forced to work near Kozlowski or to be in an area alone with him.

Finally, Plaintiff argues that Defendant's "cavalier" approach to its duty to respond to her complaint is shown by the facts that Kozlowski was allowed to post a card thanking his co-workers for their support during the investigation and his appeal, that Sigler told Plaintiff as part of her explanation for allowing the card that the institution was a "boys' club" and that she "should get used to it," and that Kozlowski was "emboldened" to pat her hand and say "you tell 'em, Rincker." (Doc. 28 at 16-17). What these actions do not show, however, is that Defendant's response to the complaint - investigation, separation of Plaintiff and Kozlowski, and Kozlowski's suspension - was unreasonable or ineffective. The fact that Kozlowski may not have taken it as seriously as Plaintiff would have liked, or that he was not punished to the extent she would wish does not render the response unreasonable. *See, e.g.*, *Tutman*, 209 F.3d at 1049 (employer's response reasonable though harasser did not attend sensitivity training as ordered and wrote unconvincing apology to plaintiff); *Saxton*, 10 F.3d at 529 (employer's response reasonable though harasser never took sexual harassment course as ordered).

Ultimately, Plaintiff's arguments fail to show that Defendant's response to the alleged harassment was unreasonable. Defendant carried out an appropriate and timely investigation, suspended Kozlowski from work, and attempted to separate Plaintiff from Kozlowski at work. Further, Kozlowski did not engage in any further sexual harassment toward Plaintiff, and "[t]here is no question that a

19

'stoppage of harassment shows effectiveness'" of the employer's response. *Porter*, 576 F.3d at 367 (*quoting Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998)[15]). The Court finds that, as a matter of law, Defendant's response to the harassment was reasonable, and that there is thus no basis for employer liability under Title VII.

## CONCLUSION

Plaintiff has failed to show that a genuine issue of material fact exists as to both whether the sexual harassment she suffered was sufficiently severe or pervasive to be actionable under Title VII, and whether Defendant's response to the harassment was reasonable. Both questions must be decided in Defendant's favor as a matter of law.

IT IS THEREFORE ORDRED that Defendant's Motion for Summary Judgment (Doc. 25) is GRANTED, and its Motion to Strike (Doc. 29) is DENIED AS MOOT.

CASE TERMINATED.

Entered this 26th day of July, 2010.

                                                       s/ Joe B. McDade
                                                      JOE BILLY McDADE
                                                      United States Senior District Judge

---

[15] Indeed, the *Adler* court indicated that it considered "the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment" only when "effectiveness is not readily evidenced by a stoppage." *Adler*, 144 F.3d at 676 (*citing Knabe v. The Boury Corp.*, 114 F.3d 407, 414 (3d Cir. 1997); *Saxton*, 10 F.3d at 535; *Ellison*, 924 F.2d at 882; *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 578 (10th Cir. 1990)). Under the Tenth Circuit's analysis, where the response was effective to stop the harassment, it appears that there is no need for a court to delve into the details of the response to find that it was reasonable.